[Civ. No. 25494.   Second Dist., Div. One.   Mar. 20, 1962.]

FRANKIE LEE WADE, Plaintiff and Appellant, v. DONALD M. TODD, Defendant and Respondent.

Brody & Grayson and Saul Grayson for Plaintiff and Appellant.

Veatch, Thomas & Carlson and Henry F. Walker for Defendant and Respondent.

WOOD, P. J.—In this action for damages for personal injuries resulting from a collision of automobiles, judgment in a jury trial was for defendant.

Upon plaintiff's appeal from the judgment, her only contention is that the court erred in permitting counsel for defendant to ask her, upon cross-examination and over her objection, questions concerning her marital status.

The collision occurred about 8 o'clock in the morning at the "T" intersection of Firestone Boulevard and Beaudine Street in Los Angeles. Firestone, which extends east and west, is 90 feet wide. Beaudine, which extends south from Firestone (but not north thereof), is 35 feet wide. There are two white lines in the center of Firestone, and two traffic lanes on each side of the center—which lanes are divided by a single white line. At the east and west sides of the intersection there are pedestrian crosswalks, 12 feet wide, which extend across Firestone and are marked with white lines. There are tri-light traffic signals (red, orange, and green) at the corners of the intersection.

Defendant, called as a witness by plaintiff under section 2055 of the Code of Civil Procedure, testified as follows: He was employed by the Firestone Tire and Rubber Company as a real estate negotiator. The plant of the company was on the north side of Firestone Boulevard in the area of the intersection involved here. He was driving a Pontiac automobile west on Firestone, intending to turn left at said intersection and go to a gasoline service station at the southwest corner of the intersection. As he approached the intersection the traffic signal was red, and he stopped his automobile back of the east line of the easterly crosswalk, in the traffic lane next to the center double line. At that time, two east bound vehicles were stopped on the west side of the intersection—

one was a station wagon which was in the lane next to the center line, and the other one was a panel truck in the lane next to (south of) the station wagon. While defendant was stopped there, the left-turn blinker light of his automobile was operating, and pedestrians were crossing Firestone from south to north in the crosswalk on the west side of the intersection. When the traffic light changed to green, defendant proceeded forward, about 27 feet, to the middle of the street and stopped, waiting for the two eastbound vehicles to pull out. While he was proceeding to that place, the other vehicles did not move, and the driver of the station wagon was "waving" him (defendant) "through" the intersection. Then, while defendant was proceeding to make the left turn, the two other vehicles did not move forward. He was traveling at a rate of "not over five miles an hour." When he was at a place in the intersection where the front part of his Pontiac was "abreast of the right side of the truck," he could see the driver of the truck and could see for a distance of "a few feet back" of the right side of the truck. After he had "cleared the truck" he looked toward the driveway of the service station which he intended to enter. When his automobile, except approximately the rear 6 feet of it, was out of the intersection the rear right corner of his automobile was struck by a Dodge automobile which was traveling east on Firestone. He did not see the Dodge automobile before the impact. Plaintiff was the driver of that automobile.

Plaintiff testified, in part, as follows: At the time of the collision she was driving a Dodge automobile east on Firestone, intending to go to a motel in Downey where she was employed as a maid. She was traveling in the right-hand or south traffic lane. When she was approaching the intersection and was about 100 feet therefrom, traveling 25 to 30 miles an hour, the signal (for traffic on Firestone) changed from red to green. At that time one automobile was about two car lengths ahead of her in the same lane in which she was traveling. She first saw defendant's automobile when it was in the east crosswalk, just entering the intersection, and was turning to the left. At that time the front of her automobile was at the west line of the west crosswalk. Also at that time two eastbound automobiles were in the intersection, just entering the east crosswalk—one of them was in the same lane she was in (outside or right lane), and the other one was in the inside lane or lane next to the center line. When she saw defendant's automobile making a left turn, she applied the

brakes and swerved her automobile to the left. The brake
pressure was applied at the time the automobiles "came in
contact." The right front of her automobile came in contact
with the left rear of defendant's automobile. When defend-
ant's automobile was making the left turn it was traveling
at the rate of approximately 25 miles an hour. (On a diagram
[Exhibit A] she marked a place indicating that the collision
occurred when the rear of defendant's automobile was about
5 feet from the south side, and about 2 feet from the west
side, of the intersection.)

She testified further that after the accident she had trouble
with her neck, back, and stomach (abdomen); pursuant to
a physician's advice she wore a neck brace and a back girdle
for a period of approximately four months; she did not
receive any cuts or bruises in the accident; by reason of the
injuries she received, she did not work during a period of
five months after the accident; the pains in her neck and
back prevented her from working.

Appellant (plaintiff) argues that the court erred
prejudicially in permitting counsel for defendant "to elicit
from plaintiff the admission that she was not married to
Mr. Wade," because it was impeachment regarding a col-
lateral, irrelevant, and immaterial matter, and it had a direct
tendency to degrade her character.

Plaintiff testified that her name is Frankie Lee Wade. While
she was testifying on direct examination, her counsel asked
her where she was living at the time of the accident. She
replied by stating a certain street address. Then her counsel
asked questions, and she replied, as follows: "Q. You lived
there with your husband? A. That is right. Q. And what is
you husband's name? A. Jimmy Lee Wade." She testified
that when she returned to work (five months after the acci-
dent) she could not do the work as well as she had done it
before the accident, because she kept suffering with her back.
Her counsel asked her if certain things (other than work)
caused her back to bother her, and "Just tell us how it
bothered you." She replied: "It bothered me all the time,
especially when I had sexual dealings with my husband."
Her counsel asked her: "Now, did you mention to Dr. Lyon
[her physician] that your back hurt you when you had sexual
intercourse with your husband." She replied: "Yes, I did."
Her counsel asked her questions, and she replied, as follows:
"Q. Was there a period of time right after the accident when

you did not have sexual intercourse with your husband? A. No, I didn't—I didn't. Q. Let me make sure you understand me. The first week or two after the accident, did you have sexual intercourse with your husband? A. No, I didn't. Q. How long was it before you resumed having marital relations or sexual intercourse with your husband. A. About four months. Q. You had pain, is that right? A. That is right."

On cross-examination by counsel for defendant, she was asked if she told the investigating officer (at the scene of the accident) that her name was Frankie Lee Moten. She replied: "That's right. That was on my driver's license." Then he asked questions, and she replied, as follows: "Q. But your name was really Frankie Lee Wade? A. That's right. Q. Now, Mr. Moten was a prior husband? A. That's right. Q. And you had subsequently married Mr. Wade? A. That's right. Q. When was it that you married Mr. Wade? A. In '56."

On further cross-examination, counsel for defendant asked plaintiff if she worked at the motel under the name of Moten. She replied: "Wade." Then counsel for defendant said he had a photostatic copy of a letter of January 20, 1959. (The letter, so referred to, allegedly was written by someone at the motel and was addressed to plaintiff as "Dear Mrs. Moten.") Thereupon, counsel for plaintiff requested permission for the attorneys to approach the bench. At the bench, not within the hearing of the jury, counsel for plaintiff objected to questions relating to whether plaintiff used the name Wade or Moten, and to whether she was or was not married. The objection was made upon the ground that "it is immaterial" and is an attempt to impeach the witness on something that is immaterial and irrelevant. The objection was overruled. Then counsel for defendant asked her: "Were you ever married to Mr. Wade at any time before this accident?" She replied, "No."

It thus appears that appellant was the one who first brought before the court the matter regarding her husband. On direct examination her counsel asked her several questions which referred to her "husband." He asked if she lived at a certain address with her "husband." When she replied in the affirmative, he asked her to state her "husband's" name. She replied that his name is Jimmy Lee Wade. Her counsel asked her a question which apparently was calculated to bring before the court an answer to the effect that the alleged back injury not only interfered with her work at the motel but that it interfered with the family or marital relations between

her and her "husband." In that question, her counsel, after referring to her testimony that her back bothered her while she was working at the motel, asked her if "certain things" caused her back to bother her, and to tell how it bothered her. She replied that her back bothered her when she had sexual dealings with her "husband." Thereafter, her counsel asked her six questions wherein sexual or marital relations with her "husband" were referred to. (Rep. Tr., pp. 71 and 73.) Under the circumstances shown by the evidence, where the alleged relationship of husband and wife, and the alleged interference therewith, were emphasized to such an extent on appellant's direct examination, it is reasonable to conclude that she intentionally made her marital status a material issue on the question of damages. It is apparent that she sought to gain an advantage in the matter of amount of damages by presenting evidence to the effect that the injuries she received in the collision interfered with her marital relations. Since she made a material issue as to her marital status, the defendant was justified in cross-examining her on that subject in an attempt to establish that the relationship of husband and wife did not exist, and to impeach her as a witness. The cross-examination brought forth an admission by her that she had not married Wade.

In *Rayner* v. *Ramirez*, 159 Cal.App.2d 372, 384 [324 P.2d 83], it was said: "If it was error to impeach her on a collateral matter, as claimed by her, . . . plaintiff invited such evidence by claiming future loss of support and denying her subsequent marriage. A wide discretion is allowed on cross-examination to determine the facts and the truth of the testimony given on direct examination. [Citation.] The evidence was admissible and the proffered instruction was properly refused. No prejudicial error resulted."

In the present case the court did not err in permitting defendant to cross-examine plaintiff concerning her marital status.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied April 16, 1962, and appellant's petition for a hearing by the Supreme Court was denied May 16, 1962.