[Civ. No. 9232. Fourth Dist., Div. Two. June 30, 1969.]

WILLIAM A. KOVACS, Plaintiff and Appellant, v. ROBERT EVERETTE STURGEON et al., Defendants and Respondents.

Harry G. Andrews for Plaintiff and Appellant.

King & Mussell, Stanley Mussell, Jr., Thompson & Colegate and Arthur W. Kelly, Jr., for Defendants and Respondents.

McCABE, P. J.—Plaintiff, William Kovacs, appeals from a judgment entered upon a defense verdict in a personal injury action which arose out of a collision between a motor vehicle driven by defendant, Sturgeon, and plaintiff as a pedestrian. The principal issue of this appeal is whether the trial court was justified, under the facts, in instructing on the doctrine of assumption of risk. We have determined it was error,

serious and prejudicial, and therefore reversible to have instructed on this doctrine.

The accident happened on November 10, 1964, at about 10 p.m. when plaintiff was walking as a pedestrian eastbound on Foothill Boulevard in an unincorporated area. Foothill Boulevard at this point runs generally east and west, and plaintiff was walking on the right hand side of the street with his back to oncoming traffic. Plaintiff was wearing a jacket with dark trousers and oxblood shoes. The weather was misty and the ground was damp. For approximately 500 feet up to the point where the accident occurred, there was no sidewalk, only a dirt shoulder which was "wider" than 5 or 6 feet. At that point, Foothill consisted of two eastbound lanes bounded by a 24-inch macadam shoulder and the dirt shoulder.

Plaintiff testified[1] he was walking about 30 inches off the blacktop prior to the impact and observed 25 to 30 cars pass him, of which 5 or 6 cars were in the number two or more southerly lane; he was struck while on the east driveway of a trailer park; the area was somewhat lighted, there being two lights on the first entrance of the driveway and two lights on the second entrance of the driveway; he saw and heard nothing before he was hit. The two lights were on pillars some distance back from Foothill Boulevard and used 60-watt bulbs. The park driveway was of a macadam or asphalt surface.

After plaintiff was put in the ambulance he was alternately conscious and semi-conscious and unconscious during the trip to the hospital. He was also in a state of shock. During the trip to the hospital, however, he became semi-conscious and told the attendant that he was hit while walking in the dirt. Plaintiff remembers nothing of the events after he was struck until he was in the hospital for a considerable period of time.

Defendant Sturgeon, who was 17 years of age at the time of the accident, testified that on the night in question he was out driving his 1957 Chevrolet with his girl friend. His car was in good operating condition, except for the fact that the right windshield wiper had stopped functioning that same evening as he was driving to his girl friend's house to pick her up. At the time of the impact, he was traveling between 35 and 40 miles per hour and was headed eastward on Foothill Boulevard. It was wet outside, but he did not have his windshield wipers on and it was not raining, misty or cloudy. When he was in the number two lane opposite the trailer park, he felt a

---

[1]The record does not reflect plaintiff's age.

thump. He did not see what he had struck until after the accident, at the time of the impact he was looking straight ahead, and his left wheel was 3 or 4 inches from the line that divides the two eastbound lanes of traffic.

Defendant Sturgeon's girl friend testified that at the time of impact, defendant's car was on the road. This witness testified that although she was looking straight ahead, she did not see the man who was hit by the car.

One of the investigating officers called by the defense testified that after the accident he examined plaintiff's shoes and observed the left shoe had scrape marks on the bottom of the sole and the right shoe had mud on the bottom of the sole. The scrape marks were described as grooves cut into the leather of the sole extending from the tip of the shoe back several inches and were of the type that would be cut by the asphalt or cement road surface.

Another officer testified that he responded to a call concerning the accident, but when he arrived the plaintiff had been removed by the ambulance. His investigation consisted of searching the area for physical evidence. He examined both the dirt shoulder, which was damp, and the paved portion of the road, but found no tire marks or skid marks. Defendant Sturgeon's testimony was that he did not see plaintiff before the accident.

Plaintiff brought this action against Robert Sturgeon, his mother and stepfather, Mr. and Mrs. Spring, and Bill Bader Chevrolet (hereafter Bader). The liability of defendant Sturgeon was predicated upon alleged negligence. The liability of defendant Bader was predicated upon the fact that it, being a dealership, failed to comply with Vehicle Code, section 5901, in that it never filed with the Department of Motor Vehicles a notice of sale of the subject vehicle involved in the accident and hence it was statutorily liable as an owner. The jury brought in a verdict in favor of the defendants. From the judgment entered on the verdict, plaintiff has appealed.

██ The question of whether the giving of the assumption of risk instruction was prejudicial error requiring a reversal of the judgment is answered by *Vierra* v. *Fifth Ave. Rental Service,* 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777], and authorities cited therein. ██ The Supreme Court succinctly states the application of the doctrine of assumption of risk at p. 271: ''To warrant the application of the doctrine the evidence must show that the victim appreciated the specific danger involved. He does not assume any risk he does not

know or appreciate. (See generally 35 Cal.Jur.2d, Negligence, § 266, p. 814 et seq.) Stated another way, before the doctrine is applicable, the victim must have not only general knowledge of a danger, but must have knowledge of the particular danger, that is, knowledge of the magnitude of the risk involved.''

 Assumption of risk is an affirmative defense requiring the party who asserts it to assume the burden of proof. The evidence reflects the defendants did not carry their burden of proof as required by *Vierra, supra,* and cases therein cited. Under the evidence in this case, it was error prejudicially proportioned, for the trial court to give an instruction on assumption of risk.

There was no evidence at the trial of this case which would allow for an application of Vehicle Code, section 21956.[2]

Defendants presented evidence which reflected that the accident occurred outside of a business or residence district. Defendants presented no evidence as to whether the dirt shoulder plaintiff was walking upon was part of the ''highway, improved, designed, or ordinarily used for vehicular travel.'' A pedestrian may walk on the right side of a highway if he is outside the limits of the roadway (*Gioldi* v. *Sartorio,* 119 Cal.App.2d 198. 200 [259 P.2d 62] ; *Lesser* v. *McCullough,* 90 Cal.App.2d 586, 589, 590 [203 P.2d 832] ; *Summers* v. *Dominguez,* 29 Cal.App.2d 308. 311-312 [84 P.2d 237] ) and since the question as to whether the shoulder of the road is a part of the ''roadway'' is a factual question for the trier of fact (*Fry* v. *Young,* 267 Cal.App.2d 340. 349 [73 Cal.Rptr. 62] ; *Summers* v. *Dominguez, supra,* p. 312) we cannot, as seemingly contended for, hold plaintiff's conduct contributorily negligent as a matter of law. Under the instructions, the jury could have found no contributory negligence but assumption of risk. That being so, the instructions on that doctrine were prejudicial. (*Vierra* v. *Fifth Ave. Rental Service, supra,* 60 Cal.2d 266, 275.) As stated in *Vierra* at p. 271: ''The doctrine is to be distinguished from contributory negligence (see Note 82 A.L.R.2d 1218), although the two may arise from the same set of facts and frequently overlap. But the two doctrines are essentially different. Contributory negligence arises when the plaintiff fails to exercise due care. Assumption of risk arises regardless of the degree of

---

[2] Section 21956, Vehicle Code, reads: ''No pedestrian shall walk upon any roadway outside of a business or residence district otherwise than close to his lefthand edge of the roadway.''

care used. It is based, fundamentally, on consent. Contributory negligence is not.''

The trier of the fact could find plaintiff was contributorily negligent but this possibility does not force a legal conclusion that the giving of the instruction on the doctrine of assumption of risk was not prejudicial requiring a reversal.

Plaintiff's theory of Bader's liability is premised upon Bader's failure to comply with section 5901 of the Vehicle Code.

Sometime about the middle of October, Mr. and Mrs. Larson owned the 1957 Chevrolet which later came into the possession of defendants Sturgeon and his mother, Mrs. Spring. Mr. and Mrs. Larson, for a value of $300, traded in the 1957 car for a newer model car at Bader's and paid the difference in cash. The Larsons were given possession of the new model car. The Larsons delivered the ''pink slip'' on the 1957 car to Bader when they purchased the newer model. There is no dispute that the Larson transaction was with Bader rather than any one salesman or representative of Bader's. The papers representing their purchase of the new car were on Bader forms.

At the time of the Larson transaction, a vehicle purchase order form was prepared and signed by Mr. Larson, and in the space ''Salesman'' the name ''Verne'' appears together with the name ''Pope.'' This signed form admitted into evidence was a copy of the original. On the form it is stated a 1957 Chevrolet was traded in on the new car for a valuation of $300. Mr. Pope testified the original of the form was thrown away by him. After throwing away the original, Mr. Pope personally made out a new form showing the Larson transaction to be a cash deal (no old car trade-in). This new form has the name ''Verne'' on it. The signature of either Mr. or Mrs. Larson does not appear on the subsequently prepared new form. It was the new form which was ''turned in'' to Bill Bader Chevrolet. Mr. Langston's given name is Vernon but he is nicknamed ''Verne.'' It is unexplained why one of the exhibits the ''pink slip'' on the 1957 Chevrolet, was signed by Mr. Larson and dated ''11-19-64,'' and why in the space ''Name of New Registered Owner'' the names of ''Robert Sturgeon or Roberta Spring, 11-19-64'' appeared. These dates would be after the accident of November 10, but there is no evidence by whom or when the figures ''11-19-64'' were inserted.

As to the transaction in purchasing the 1957 Chevrolet, Mrs. Spring testified she borrowed $350 to purchase the 1957 Chevrolet and received this loan in form of a check made

payable to her. She indorsed the check in blank. The testimony is unclear as to whether she handed the indorsed check to Mr. Langston, a Bader car salesman, or to her husband, Mr. Spring. No bill of sale or other like document was given to her by Bader. Regardless, she and her son, defendant Sturgeon, drove the car from the Bader lot to be returned the next day to have some work done on the vehicle. It was returned on October 16. Later, defendant Sturgeon paid his mother the amount she had paid for the car. Whether she received the certificate of ownership (pink slip) that day or her husband brought it to her is somewhat uncertain from the record before us. After this transaction and sometime later, Mrs. Spring went to the Motor Vehicle Department to have the registration changed. The record is silent as to when Mrs. Spring took the certificate of ownership, indorsed by Mr. Larson, to the Department of Motor Vehicles. The only evidence is on the exhibit which reflects ''11-19-64.'' After some difficulties, she was able to get the necessary transfer papers. The certificate of ownership was received by Mrs. Spring from the Department of Motor Vehicles sometime in December 1964 showing title in herself and her son. At no time did the Bader name appear on the ''pink slip'' which Larson signed.

At no time was the Larson transaction reflected on the Bader books as a ''trade-in'' with a cash difference. The transaction was entered as a cash transaction. Admittedly, at the time of the Larson transaction and the transfer of the 1957 Chevrolet to Mrs. Spring and her son, Mr. Fred Pope was the new car manager for Bader, Mr. Vernon Langston was a new and used car salesman for Bader, and Mr. Spring was a car salesman for Bader.

Before the Larson transaction, Mr. Doyle W. Bader, president of Bader Chevrolet, had given instructions to his salesmen, including Mr. Pope, that they were forbidden to ''curb'' used cars. This term describes and encompasses the type of transaction and activity engaged in by the transfer of possession and title of the 1957 Chevrolet.

Section 5901, Vehicle Code, in 1964 provided, ''Every dealer upon transferring by sale . . . , any vehicle, whether new or used, . . . shall, not later than the end of the next business day . . . , give written notice of the transfer to the department upon an appropriate form provided by it, . . .''

There can be no question that Bader is a dealer within the meaning of section 5901, *supra,* or that Mr. Pope and Mr. Langston were agents of Bader with actual or ostensible

authority conferred upon them. (Civ. Code, § 2315.) The Larsons gave the indorsed certificate of ownership to a duly authorized agent of Bader. This agent had authority to accept the certificate, accept the trade-in, sell the new car, receive the cash difference, prepare and sign the ''Vehicle Purchase Order'' and deliver the new car to the Larsons. All of these acts were done. The fact that Bader did not comply with the Vehicle Code sections to transfer title on the records of the Motor Vehicle Department cannot be the determinative factor as to ownership of the 1957 Chevrolet. Bader became the actual owner of that vehicle even though there was no compliance with the provisions of the Vehicle Code with reference to the transfer of title. (*Ferroni* v. *Pacific Finance Corp.*, 21 Cal.2d 773, 778 [135 P.2d 569]; *Helmuth* v. *Frame*, 46 Cal. App.2d 372 [115 P.2d 846]; *Schmidt* v. *C.I.T. Corp.*, 14 Cal. App.2d 92 [57 P.2d 1016]; cf. *Ellis* v. *Community Chevrolet, Inc.*, 242 Cal.App.2d 79 [51 Cal.Rptr. 154]; *Everly* v. *Creech*, 139 Cal.App.2d 651 [294 P.2d 109].)

Bader asserts the unauthorized acts of its agents by ''curbing'' exonerated it from liability. We cannot agree with this assertion. Bader, being a corporation, could only act through its agents. When the authorized agents of Bader completed the Larson transaction, Bader became the owner of the 1957 Chevrolet and it had notice that it was the owner of the vehicle. No other act had to be done to complete the title in Bader. It did not comply with the Vehicle Code sections either to transfer title from Larsons to it or from it to defendants Spring and Sturgeon.

As understood by this court, the act of ''curbing'' is discouraged by dealers for the specific reason that the dealer is thereby deprived of any financial gain which may be derived from a resale of the used vehicle which comes onto the dealer's lot. The prohibition against ''curbing'' is an internal operation of the dealer's business. The dealer cannot gain absolution, as a matter of law, from the owner's and dealer's statutory liability by the fact the agents violated the dealer's order.

Plaintiff's contention that the trial court erred in admitting testimony concerning his drinking habits is without merit. Plaintiff relies upon *Wilson* v. *Manduca*, 233 Cal.App.2d 184 [43 Cal.Rptr. 435], which held it was error to admit evidence of plaintiff's drinking habits where there was no showing that plaintiff had been drinking prior to or contemporaneously with the execution of her admitted or alleged signatures. In the case at bench, plaintiff admitted consump-

486 ▪

tion of one and a half glasses of beer immediately preceding the accident. Moreover, at the time of the accident he was on his way to another bar, but claimed he was going to see the bartender about playing golf the following day although he testified prior to this time he had never played golf with that bartender.

Beyond this and more importantly the complained of testimony was offered to impeach plaintiff. On cross-examination, plaintiff testified he did not habitually use intoxicating beverages every night; all his life he had been a very moderate user of alcohol; and while he kept wine at home, it was only used when guests arrived. ▪ It is fundamental that wide latitude is permitted on cross-examination to determine the facts and the truth of testimony given on direct examination. (*Payette* v. *Sterle*, 202 Cal.App.2d 372, 375 [21 Cal.Rptr. 22]; *Wade* v. *Todd*, 201 Cal.App.2d 594, 599 [20 Cal.Rptr. 245].) This is especially true where the witness is a party to the action. (*Ginocchio* v. *Davison*, 198 Cal.App.2d 514, 519 [18 Cal.Rptr. 27]; see Evid. Code, § 773.)

▪ In this framework, the defense called plaintiff's former wife who testified that plaintiff during the last five years of their marriage (which was extant at the time of the accident) used intoxicating liquors frequently; it was every weekend or holiday and plaintiff went to a bar every night. It is apparent that the injury complained of was relevant and that the subject matter of the impeachment was admissible within the discretion of the trial court. Under section 780 of the Evidence Code, there is no specific limitation on the use of impeaching evidence on the ground that it is "collateral."[3] This section, together with sections 351 and 352, has eliminated the inflexible rule of exclusion with regard to "collateral matter" and replaced it with a rule of discretion to be exercised by the trial court.

If this evidence is sought to be introduced, and is introduced for impeachment purposes, on any jury retrial of this case, the offering party should submit and the court could and should give an instruction limiting the use of the evidence.

---

[3]Law Revision Commission comment: "The effect of Section 780 (together with Section 351) is to eliminate this inflexible rule of exclusion. This is not to say that all evidence of a collateral nature offered to attack the credibility of a witness would be admissible. Under Section 352, the court has substantial discretion to exclude collateral evidence. The effect of Section 780, therefore, is to change the present somewhat inflexible rule of exclusion to a rule of discretion to be exercised by the trial judge."

No speculation can determine the basis upon which the jury reached its verdict. There are many possibilities, including a finding that plaintiff was contributorily negligent; also, there is a possibility the jury applied the doctrine of assumption of risk, the giving of which we have found to be reversible error under the facts of this case. There being these possibilities, the judgment must be reversed in its entirety.

Judgment reversed.

Kerrigan, J., and Tamura, J., concurred.

The petition of respondent Sturgeon for a hearing by the Supreme Court was denied August 27, 1969.