[Civ. No. 38348. Second Dist., Div. Three. Dec. 21, 1971.]

AUBREY RICHIE, Plaintiff and Appellant, v.
TATE MOTORS, INC. et al., Defendants and Respondents.

---

**COUNSEL**

Scher & Cornblum and Bruce Cornblum for Plaintiff and Appellant.

Nichols, Stead, Boileau & Lamb and Curtis W. Morris for Defendants and Respondents.

---

**OPINION**

**SCHWEITZER, J.**—On October 5, 1967 C. M. Finn purchased a new 1967 Pontiac from defendant Tate Motors, Inc. The sales agreement and the conditional sales contract indicate that Finn made a cash down payment of $384 and that there was no trade-in. Actually Finn delivered to Bill Canary, a salesman for Tate Motors, $284 cash, a 1958 Pontiac automobile, together with the "pink slip" thereto, endorsed in blank, and a Department of Motor Vehicle form indicating the transfer of ownership of the 1958 Pontiac to Tate Motors. (Veh. Code, § 5900.) Since the 1958 Pontiac was not acceptable to Tate Motors as a trade-in, Canary arranged for Arvid Aune, a mechanic employed by Tate Motors, to buy the 1958 Pontiac for $100. Canary then added this $100 to the $284 paid by Finn, thus giving Finn the $384 credited as down payment on the 1967 Pontiac.

The record is not clear as to when Canary made this arrangement with Aune, when the $100 was credited to Finn's account, or when Aune obtained possession of the 1958 Pontiac. In his answers to interrogatories, received in evidence, Aune said that he never met Finn and that he purchased the 1958 Pontiac from Finn at the "end of November, 1967"; on the Department of Motor Vehicle change of ownership form, Aune indicated that he purchased the car from Finn on January 6, 1968. This confusion, however, becomes immaterial in view of the concession made by Tate Motors at trial that under the circumstances Tate Motors must be deemed to be an "owner" of the 1958 Pontiac as of October 5, 1967.

(See *Kovacs* v. *Sturgeon,* 274 Cal.App.2d 478, 483-485 [79 Cal.Rptr. 426].[1])

There is no evidence that Tate Motors at any time executed or delivered any notice or other documents to the Department of Motor Vehicles indicating its ownership of the 1958 Pontiac or the transfer of its ownership to Aune.

On January 19, 1968, Aune notified the Department of Motor Vehicles of the change of ownership from Finn to him and executed all documents necessary to place both the legal and registered title to the 1958 Pontiac in his name.

On February 10, 1968, while driving the 1958 Pontiac, Aune was involved in an accident in which plaintiff was injured. Thereafter plaintiff filed this action against Aune, Finn, Tate Motors and Canary. Aune admitted liability and stipulated to a judgment against him in the sum of $125,000. The action was dismissed as to Finn. Following a nonjury trial on the issue of the liability of Tate Motors and Canary, the court found that on February 10, 1968, Aune was the sole owner of the 1958 Pontiac, that at the time of the accident he was not driving the car as an agent or employee of Tate Motors or Canary, and that neither Tate Motors nor Canary was liable for any damages suffered by plaintiff.

Plaintiff appeals from this adverse judgment, contending that an automobile dealer is liable as an "owner" for damages caused by the purchaser of an automobile until the dealer complies with section 5901 of the Vehicle Code,[2] even though the purchaser of the vehicle reported the change of ownership to the Department of Motor Vehicles prior to the date of the accident.

Although the admission by Tate Motors that it became an owner of the 1958 Pontiac on October 5, 1967 is inconsistent with Aune's testimony,

---

[1]In both *Kovacs* and in the instant case, the purchase and resale of the car taken in trade was a personal transaction of the salesman, without the knowledge or consent of the dealer. It is a practice referred to as "curbing" and apparently is discouraged by dealers. *Kovacs* held that since the salesman acted with the apparent authority of the dealer, the dealer could not be relieved of the statutory liability of an "owner" by asserting that the acts of the salesman were unauthorized. (274 Cal. App.2d at p. 485.)

[2]Section 5901 provides in part: "Every dealer upon transferring by sale, lease or otherwise any vehicle, whether new or used, of a type subject to registration under this code, shall, not later than the end of the third business day *thereafter* of the dealer, give written notice of the transfer to the department upon an appropriate form provided by it, but a dealer need not give the notice when selling or transferring a new unregistered vehicle to another dealer."

dual ownership for the purpose of liability under section 17150[3] (formerly § 402) of the Vehicle Code has been recognized in cases where a dealer fails to give the notice of change of ownership required by the Vehicle Code. (See *Stoddart* v. *Peirce,* 53 Cal.2d 105, 115 [346 P.2d 774]; *Uber* v. *Ohio Casualty Ins. Co.,* 247 Cal.App.2d 611, 615 [55 Cal.Rptr. 720].)

In *Stoddart* v. *Peirce, supra,* the dealer-seller failed to give written notice of sale to the Department of Motor Vehicles within the time required by section 177, subdivision (b) (now § 5901[4]) but did give written notice prior to the date on which the purchaser of the auto was involved in an accident; the plaintiff sought to hold the dealer liable as an "owner" because of his late compliance with the pertinent Vehicle Code sections. The Supreme Court noted at page 115 that reported decisions had held that strict compliance with section 178 (now § 5602[5]) and its allied sections is required before a dealer may escape the liability imposed by section 402 (now § 17150). The court then analyzed the various sections of the code relating to notice (pp. 115-121), and held that under the facts presented the dealer's substantial compliance was sufficient to relieve him of liability, stating that the purposes of the sections were to protect innocent purchasers and to afford identification of vehicles and of persons responsible in cases of accident, and not to enlarge the number of persons responsible under section 402 (§ 17150). (Cf. *Meza* v. *Ralph,* 195 Cal.App.2d 453, 456-458 [15 Cal.Rptr. 754]; *Borjesson* v. *Simpson,* 177 Cal.App.2d 365, 368-375 [2 Cal.Rptr. 366].)

Plaintiff attempts to distinguish the instant case from the foregoing authorities on the ground that in each of the cited cases, although the dealer did not strictly comply with the law, the dealer supplied sufficient

---

[3]Section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from *a negligent or wrongful act or omission* in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."

[4]Section 177, subdivision (b) required the notice to be given prior to the expiration of the first business day after the sale was consummated; the present "third business day" requirement was adopted in 1965.

[5]Section 5602 provides: "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of the vehicle so as to be subject to civil liability for the operation of the vehicle thereafter by another when the owner in addition to the foregoing has fulfilled either of the following requirements:

"(a) When he has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(b) When he has delivered to the department or has placed in the United States mail, addressed to the department, either the notice as provided in Section 5900 or Section 5901 or appropriate documents for registration of the vehicle pursuant to the sale or transfer."

information prior to the accident in question to meet the stated purposes of the statute, thus giving the public complete protection. Here, as plaintiff correctly points out, the dealer at no time made any effort to comply with the requirements of section 5901 and allied sections. Plaintiff argues that the dealer's obligation is nondelegable, and that even though the forms delivered to the Department of Motor Vehicles by Aune prior to the accident provided the Department of Motor Vehicles with substantially the same information that would have been supplied by the dealer in a section 5901 notice, until the dealer personally complies therewith, he has a continuing liability as an "owner" under section 17150. It appears that neither the present factual situation nor plaintiff's contention has been considered in any reported decision.

The contention requires an interpretation of the pertinent code sections. In doing so we are guided by certain well-defined principles. ■ "[T]he object of all construction of statutes is to ascertain and give effect to the intention of the legislature. [Citation.] In the analysis of statutes for the purpose of finding the legislative intent, regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments. [Citation.] While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language. [Citation.]" (*County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634, 639 [122 P.2d 526].)

■ Here our task has been simplified by *Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 115-121, wherein the Supreme Court reviewed the pertinent sections of the Vehicle Code and concluded that the purposes of these sections were to protect innocent purchasers and to afford identification of vehicles and of persons responsible in cases of accident, and not to enlarge the number of persons responsible under section 402 (now § 17150). The court stated at page 120: "It seems quite obvious that when the sections are considered as a whole, it must be held that when the Dealer's Notice reaches the Department, and contains full information properly identifying the vehicle and all parties, and places each in its or his relative position in regard to the transactions which have taken place, all prior to the accident in question, then every purpose of the statutory requirements has been fulfilled, and complete protection has been given to the public. To hold otherwise would be to read into the legislation a penalty which the Legislature could not have intended, and which is not specifically expressed in any code section."

■ Here the documents delivered by Aune to the Department of

Motor Vehicles on January 19, 1968, approximately three weeks before the accident in question, supplied all of the information which the Supreme Court has indicated was necessary to meet the legislative intent of the pertinent code sections. They clearly showed that as of that date Aune was the legal and registered owner; thus innocent purchasers would thereafter be protected; both the vehicle and the person responsible in case of accident were identified. True, these documents did not reveal that the dealer had been an "owner" for purposes of liability under section 17150; it is not clear under the facts of this case that Tate Motors had knowledge thereof prior to this litigation. To hold the dealer liable under these circumstances would mean that the dealer's liability as an "owner" might continue throughout numerous successive conveyances of title to the automobile. Such continuing liability would be beyond the purposes of the legislation, as defined by *Stoddart*, and would amount to a penalty, which *Stoddart* states was not contemplated by the Legislature.

We find additional support for our conclusion in section 5602 which sets forth requirements for releasing an owner from liability. Subdivision (b) thereof provides "[w]hen he has delivered to the department or has placed in the United States mail, addressed to the department, either the notice as provided in Section 5900 or Section 5901 *or appropriate documents for registration of the vehicle pursuant to the sale or transfer.*" (Italics added.) Thus we see that the Legislature provided for an alternative to the dealer's notice prescribed by section 5901. Here, the endorsed pink slip and the application for transfer of ownership form delivered by Aune to the Department of Motor Vehicles on January 19, 1968, are "appropriate documents for registration of the vehicle pursuant to the sale or transfer"; they met the legislative purposes as set forth in *Stoddart*.

Judgment affirmed.

Cobey, Acting P. J., and Allport, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 8, 1972.