Filed 9/10/13  P. v. Merriman CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KELVIN LEE MERRIMAN,<br><br>        Defendant and Appellant. | A135140<br><br>(Solano County<br>Super. Ct. No. FCR-285924) |

A jury convicted defendant Kelvin Lee Merriman of inappropriately touching his eight-year-old half sister.  He attacks the conviction, asserting the trial court erroneously allowed the jury to see several text messages in which he made advances toward the victim's married aunt.  He also asserts his admission of a prior conviction for purposes of the three strikes law was involuntary, because the trial court neglected to tell him the admission would forfeit certain rights and bring about certain penal consequences.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2011, defendant, age 27, was living in Fairfield in the same house as Jacquelyn Anderson, Jacquelyn's husband, and their five children.  One night that month, the victim, defendant's eight-year-old half sister, visited Anderson, her aunt, and spent the night at the Fairfield house.  While the victim and her cousin Christina were sleeping—they were sharing a bed—defendant came into the bedroom and rubbed the victim's "private part" over her pajamas.  The victim awoke and told defendant to leave.

1

He asked "[w]hy?" The victim again told defendant to leave, and this time, he left. According to the victim, defendant, as he left, said not to tell anyone.

Approximately two months later, around June 30 and July 1, 2011, defendant had a text message exchange with the victim's aunt, Anderson. There are two relevant parts to the exchange. The first part went as follows:

"[Defendant:] Ok...what do you kno about me and karmell?
"[Anderson:] Nothing why?
"[Anderson:] What about you and karmel?
"[Defendant:] Then why do you always call me a child molester?? N I've heard from others what u or christina said
"[Defendant:] Keep in mind I said OR
"[Anderson:] I've called u that once and that one of us said what?
"[Defendant:] I kno but y? N Christina's lexy was the one who said one of u told her I tried things wit her
"[Anderson:] Idk why Lexy said that I've never even talk to that girl I don't like her and I said it cuz of cilla when I was mad
"[Anderson:] Lexy said u touched who?
"[Defendant:] Idk but she said my sister so I assume she means karmell."

And then the second part:

"[Defendant:] Lol ok...next subject...
"[Anderson:] Do u know if she has talked to lexy in the last couple weeks?
"[Defendant:] In all seriousness tho u kno I wanna hit that . . . sorry 4 sounding so 4ward but when you gonna let me taste that?
"[Anderson:] How do u talk to lexy?
"[Defendant:] I txt her
"[Anderson:] I'm not
"[Anderson:] Olc
"[Defendant:] Did u get mad when I told u I wanted 2 fuck?
"[Anderson:] Wow Kelvin really?
"[Defendant:] Lol b real wit me on this one, please
"[Defendant:] N I can't help that u walk around in booty shorts lol...
"[Anderson:] What do u mean. . . . I am married regardless of what problems me and Brian have I love him and I wouldn't cheat on him
"[Defendant:] That's good 2 kno but all I want is one time wit u n we can leave it @ that...no strings, no damage, no drama

2

"[Defendant:]  I didn't feel like this when I first showed up but u helped create what I'm feeling now

"[Anderson:]  What r u talking about and no NOT ANY TIME with any one

"[Defendant:]  Huh? I think so and I'm not?...please don't tell me ur either tellin b or 4wardin my txts

"[Anderson:]  I never sent I think so u sent that to me

"[Defendant:]  O ok...but I at least wanna b able 2 lay wit u and hold u...n top it off u kno I like lookin @ ur ass lol n u still rock those skin tight booty shorts lol...amazing

"[Anderson:]  Omg just STOP I said NO

"[Defendant:]  Ok ok...please keep this whole convo between us...n PLEASE delete my msg thread jus in case

"[Defendant:]  Ok ok...please keep this whole convo between us...n PLEASE delete my msg thread jus in case

"[Defendant:]  Did u get that?

"[Anderson:]  She left her phone home when she left this has been b the whole time

[Defendant:]  Lol...um ok??? Should I b surprised that ur NOT mad, or am I wrong?

"[Defendant:]  ???

"[Defendant:]  Sorry about yesterday[1] . . . we've had that convo a million times b4 but I took it 2 far n that wasn't 2 Brian who had 2 see that. wasn't on drugs or drunk...I was in a shitty mood n tryin 2 get info on the whole karmell thing n I vented in the wrong way.. but either way, I went 2 so I'n apologizing 2 u and Brian

"[Defendant:]  Um ok...guess I need 2b lookin @ yesterday a bit more seriously."

As a result of this text message exchange, Anderson contacted the victim's mother.  The victim, when confronted by her mother, reported being molested.  The police arrested defendant on July 1, 2011.

The Solano County District Attorney, by information dated August 16, 2011, charged defendant with committing a lewd or lascivious act upon a child under the age of 14 in violation of Penal Code section 288, subdivision (a).[2]  The information also alleged defendant had a prior strike, a 2002 conviction for robbery in violation of section 211.  Determination of defendant's strike was bifurcated for trial.

---

[1] The log of texts does not contain date and time stamps.  According to Anderson, this text, and those after it, date from July 1, not June 30.

[2]  All further statutory references are to the Penal Code unless noted.

3

Before trial, on September 29, 2011, the district attorney moved in limine for permission to introduce the text messages at trial. On January 12, 2012, defendant responded with a motion in limine to exclude the text messages and a vaguely incriminating Facebook post about "skeletons" belonging in the closet. Defendant argued only speculation linked him with the purported statements, only "secondary" evidence of the statements exists and should not be allowed, the statements were inadmissible hearsay, and the statements should be excluded under Evidence Code section 352 "because they lack sufficient indicia of credibility."

Trial began on January 25, 2012. Just before opening statements, the trial court heard argument on the parties' opposing motions in limine. The district attorney acknowledged the second part of the text exchange contained "conversations where the defendant is implying he wants to get together with [Anderson]" and "would not try to introduce that." The trial court ruled the first part of the text message exchange could, if properly authenticated, come into evidence, and instructed counsel to not "get into any other area unless there's a hearing outside the presence of the jury. It may or may not become relevant."

Defendant's brief opening statement made clear defendant did not dispute he touched the victim inappropriately. Rather, defendant contended he was so far under the influence of methamphetamines that he lacked the "specific intent the law requires when he touched [the victim]"—that is, "the intent of arousing . . . himself or [the victim]."

On January 26, 2012—the second day of trial—Anderson took the stand. On direct examination, the district attorney asked Anderson about her communications with defendant since his arrest, and she mentioned a letter in which he blamed his conduct on drugs. On cross-examination, defense counsel questioned Anderson about a particular letter defendant sent on July 21, 2011. Anderson testified that defendant, in his letter, discussed using drugs, how he had been "acting dumb and doing stupid things," how the drugs had interfered with his work, and how he had trouble sleeping.

After defense counsel finished, the district attorney requested a side bar. Although the sidebar was not recorded, the parties put the substance of the side bar on the record later in the day.[3] Because defendant claimed drugs caused him to touch the victim, and because portions of the July 21, 2011, letter defense counsel had referenced supported this claim, the district attorney wanted to introduce the letter itself and the balance of the text exchange, including what we described as the "second part" above. The letter stated "I feel so stupid for talking to you the way I did and I hope you know I would never get at you like that if I was sober." This was, according to Anderson, part of an apology for hitting on her while texting. Defendant texted near the time of these advances, however, he "wasn't on drugs or drunk." Thus, the full letter and the text messages were necessary to impeach defendant and challenge defendant's "under the influence" claim. Defense counsel renewed her original motion in limine objections and added she had not asked about the portion of the letter blaming his texts on drug use.

The trial court then memorialized its decision. It allowed the full letter under Evidence Code section 356 and allowed the texts, noting "inconsistencies . . . with the documents." The trial court did not think admission would be "prejudicial or misleading in light of the questions that have been posed in this case so far."

Following the unreported side bar, the district attorney had both the letter and texts admitted into evidence and questioned Anderson not only about the "[w]asn't on drugs" text, but also the texts in which defendant made advances.

Trial concluded the following day on January 27, 2012. After the jurors began deliberations, the trial court asked defense counsel if she had spoken with her client about how to handle the bifurcated strike allegation. The trial court noted defendant not only had the right to a jury trial on the strike, but could choose to have the same jury decide

---

[3] This belated recording is sufficient to preserve appellate issues arising from the unrecorded side bar. (See *People v. Dykes* (2009) 46 Cal.4th 731, 800 & 16.)

5

the matter. Defense counsel stated she needed to consult with her client and passed on the question for the moment.

After less than two hours of deliberation, the jury found defendant guilty of the charged lewd act.

With the verdict rendered, the trial court asked defendant if he would waive the right to have the same jury decide the strike allegation. Defense counsel represented she had spoken to defendant about the strike and defendant was going to waive the same jury. The trial court asked defendant if he "wish[ed] the Court to excuse this jury, and you agree to waive having this particular jury decide your prior conviction." Defendant answered "[y]es." The trial court and the parties scheduled a future hearing to deal with the strike so defense counsel and defendant could have more time to consider the matter.

On February 1, 2012, after conferring with his counsel, defendant admitted the prior strike conviction. The trial court asked defense counsel if her client understood he had "a right to have a trial on that issue." Defense counsel said he understood. Turning to defendant, the trial court asked him if he "wish[ed] to admit that you suffered a prior conviction alleged in the Information, Penal Code section 211, robbery, conviction date of 2002 in Solano County." Defendant said "[y]es."

Judgment was entered against defendant on March 29, 2012 and he was sentenced to 12 years in prison. Defendant filed a notice of appeal on April 3, 2012.

## DISCUSSION

### *Evidence of Defendant's Advances*

The main issue in this appeal is whether the trial court erred in admitting the entire contents of the July 21, 2011 letter and the second part of the text message exchange.

According to defendant, the trial court was wrong to rely on Evidence Code section 356 in admitting the letter and texts. Evidence Code section 356[4] is a special rule

---

[4] Evidence Code section 356 provides: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject

6

of relevance called the "rule of completeness," which allows introduction of an entire conversation or document if needed to give context to a portion of the conversation or document already in evidence. (*People v. Riccardi* (2012) 54 Cal.4th 758, 803.) It allows "further inquiry into *otherwise inadmissible matter* only, (1) where it relates to the same subject, and (2) it is necessary to make the already introduced conversation understood." (*People v. Gambos* (1970) 5 Cal.App.3d 187, 192–193, first italics added, second italics omitted.)

We need not address Evidence Code section 356 any further, because we conclude the entire letter and texts are relevant on their own, without resort to the rule of completeness.

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) And "[e]xcept as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to . . . [¶] . . . [¶] (e) His character for honesty or veracity or their opposites." (Evid. Code, § 780, subd. (e).)

Thus, in *Kovacs v. Sturgeon* (1969) 274 Cal.App.2d 478, 485–487, the issue was the plaintiff's level of intoxication at the time he was struck by a car. After the plaintiff testified he did not habitually use alcohol every night and was a "very moderate user," the trial court allowed the plaintiff's former wife to testify he "used intoxicating liquors frequently." The appellate court found no error, concluding the inquiry of the wife was

---

may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

7

relevant for "impeachment purposes." (*Ibid.*) Also, in *People v. Franklin* (1994) 25 Cal.App.4th 328, 335, the appellate court held a previous lie of a particular sort—a false accusation of molestation—is probative of whether a current statement of the same sort is true.

Here, the letter was, for defendant, supposed corroboration of his claimed intoxication at the time he touched the victim. The letter also blamed defendant's crass remarks to Anderson on intoxication, stating "I feel so stupid for talking to you the way I did and I hope you know I would never get at you like that if I was sober." The texts, on the other hand, show defendant's interaction with Anderson and reveal defendant's "morning after" remark that he was "[s]orry," "took it 2 far," and "wasn't on drugs or drunk." The texts contradicted defendant's contention in the letter that he was intoxicated when he accosted Anderson, suggested defendant might be prone to lie about his state of intoxication in other circumstances, and allowed the inference that defendant's claim of intoxication when he touched the victim was a sham. Thus, both the letter and texts were relevant to the central issue in defendant's trial: the claim of intoxication significant enough to eliminate his culpability. The trial court did not abuse its discretion in finding these items relevant. (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1414 [we review a determination of relevance for abuse of discretion].)

Defendant's core argument on appeal, however, is not that the letter and texts were irrelevant, but rather that their admission was unduly prejudicial under Evidence Code section 352.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "We apply the deferential abuse

8

of discretion standard when reviewing a trial court's ruling under Evidence Code section 352.  [Citation.]  . . .  For this purpose, 'prejudicial' is not synonymous with 'damaging,' but refers instead to evidence that ' "uniquely tends to evoke an emotional bias against defendant" ' without regard to its relevance on material issues.  [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.)

There is nothing in the letter remotely prejudicial to defendant.  We therefore focus on the text messages, which contain defendant's crass attempts to hit on Anderson, a married woman.

"There can be no doubt that allowing a jury to hear evidence of unsavory conduct can be reversible error due to its prejudicial effect."  (*People v. Paniagua* (2012) 209 Cal.App.4th 499, 519.)  But this is usually so only if the conduct is particularly unsavory and collateral or tangential to central issues at trial.  (*Ibid.*; *Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011, 1026 (*Winfred*).)  Thus, even evidence of a defendant's "extramarital affair may be admissible where it has a connection to a substantive issue" and is not simply a "smear" attack.  (*Winfred*, *supra*, at p. 1026 [a lie about an affair without further bearing on the main issues was not properly used for impeachment]; see also *People v. Houston* (2005) 130 Cal.App.4th 279, 307 (*Houston*) [affair was "relevant to appellant's credibility, particularly given that his August 24, 2001 note to [his wife whom he was accused of killing] specifically states that he loved her, and that he was 'a dream come true just for you' "], italics omitted.)

In *People v. Smithey* (1999) 20 Cal.4th 936, 970 (*Smithey*), a case involving less egregious "unsavory conduct" than the affairs in *Winfred* and *Houston*, our Supreme Court allowed testimony about a defendant flirting with a cashier—he told her she was pretty and took her hand in his—shortly after allegedly killing another woman.  The defense in *Smithey* was, similar to this case, that defendant suffered from mental disorders brought on in part by the use of methamphetamines, and "[a]bsent these disorders he would not have committed this particular crime."  (*Id.* at p. 956.)  The

9

Supreme Court concluded "the trial court did not abuse its discretion in overruling defendant's objection pursuant to Evidence Code section 352. Defendant's actions and speech immediately following the crime were probative of his mental condition at the time of the crime, and also of his condition at a time when he claimed he was unable to remember that he had intended to seek help for Cheryl. Gandara's statement that defendant held her hand and told her that she was pretty described relatively innocuous conduct and did not carry an undue risk of prejudice." (*Id.* at p. 970.)

This case is closer to *Smithey* and *Houston* than *Winfred*. The texts do not disclose a consummated extramarital affair, but rather show defendant flirting with Anderson. Thus our case, as *Smithey*, concerns conduct less prone to bias jurors against the defendant. In addition, the flirtation in this case is far less egregious than the evidence presented on the charged conduct, the inappropriate touching of a minor child. Further, the flirtation, though crass, was necessary to give context to the apologies in the letter and text messages defendant sent. These conflicting apologies, one blaming intoxication and one—closer to the event—blaming poor judgment, bore, as in *Houston* and *Smithey*, on a crucial issue in the case: whether defendant was telling the truth about being compromised and on drugs at the time he touched the victim. Applying the deferential standard of review applicable to a trial court's balancing under Evidence Code section 352, we conclude the trial court did not err in admitting the text messages.

For these same reasons, we also conclude that even if the trial court should have excluded the texts, its failure to do so was not prejudicial, nor did it deprive defendant of his right to due process. (See *Houston*, *supra*, 130 Cal.App.4th at pp. 308–309; cf. *People v. Albarran* (2007) 149 Cal.App.4th 214, 228–230, 232 [example of "rare and unusual occasion[]" where admitted evidence had no relevance and deprived defendant of fair trial].)

In any event, defendant has failed to offer a reasoned assessment of how the trial court's purported evidentiary errors prejudiced him, and has therefore, in any event,

10

forfeited review of these errors on appeal. "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice . . . ." (Evid. Code, § 354.) An appellant cannot win reversal by offering a mere "conclusory" recitation of prejudicial error principles or a "mere[] recti[al]" of generalized "federal and state tests for error." (*People v. Yuksel* (2012) 207 Cal.App.4th 850, 857.) Our role is not to construct arguments for defendant. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' [Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Defendant's prejudicial error discussion is conclusory and does not address the overwhelming evidence, which the Attorney General cites, that defendant acted knowingly and intentionally, including his confession to the police and his request to the victim that she say nothing.

### *Admission of Strike*

Defendant also asserts his admission of a prior strike conviction was involuntary and must be reversed.

"[B]efore accepting a criminal defendant's admission of a prior conviction,, the trial court must advise the defendant and obtain waivers of (1) the right to a trial to determine the fact of the prior conviction, (2) the right to remain silent, and (3) the right to confront adverse witnesses. [Citation.] Proper advisement and waivers of these rights in the record establish a defendant's voluntary and intelligent admission of the prior conviction." (*People v. Mosby* (2004) 33 Cal.4th 353, 356 (*Mosby*).) If the record "does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*Id.* at

11

p. 361.)  Thus, a defendant who admits a prior conviction without expressly waiving his or her rights to remain silent and confront adverse witnesses may nevertheless be found to have made a voluntary and intelligent waiver of those rights so long as "the totality of circumstances surrounding the admission supports such a conclusion." (*Id.* at p. 356.)

In *Mosby*, the Supreme Court found no prejudicial error from the trial court's failure to obtain waivers of the right to remain silent and the right to confront, because "defendant, who was represented by counsel, had just undergone a jury trial at which he did not testify, although his codefendant did.  Thus, he not only would have known of, but had just exercised, his right to remain silent at trial, forcing the prosecution to prove he had sold cocaine.  And, because he had, through counsel, confronted witnesses at that immediately concluded trial, he would have understood that at a trial he had the right of confrontation." (*Mosby*, *supra*, 33 Cal.4th at p. 364, italics omitted.)

While the Attorney General concedes the trial court failed to provide constitutional admonishments regarding defendant's rights concerning self-incrimination and confrontation, this error does not require reversal because the record does in fact demonstrates defendant's admission was voluntary and intelligent.  (See *Mosby*, *supra*, 33 Cal.4th at p. 361.)

Applying *Mosby* to this case, we think it is virtually inconceivable that a defendant who has just observed a trial in which his counsel confronted and cross-examined witnesses, and in which the defendant knew that he could have exercised his privilege against self-incrimination by declining to testify, would not understand that by waiving a trial on the prior conviction allegations, he was giving up those rights with respect to that allegation.  A defendant who sees in action the very rights in question in the context of the trial of the underlying charges cannot reasonably fail to understand that the absence of a trial means those rights are forfeited.  The record also shows defendant conferred with counsel before admitting the strike and that counsel postponed the strike hearing so

12

counsel and defendant could have the time they needed to confer. Moreover, defendant admitted the prior robbery conviction during direct examination during trial.

Defendant argues *People v. Witcher* (1995) 41 Cal.App.4th 223 (*Witcher*) compels a different result. In *Witcher*, as here, the trial court advised the defendant that he had the right to a jury trial on his prior conviction, but did not advise on the right to remain silent and to confront witnesses. (*Id.* at pp. 231–233.) The appellate court, in assessing whether defendant's admission was voluntary, minimized the defendant's other experiences going through the criminal justice system, defendant's participation in the guilt phase of the trial, and defendant's access to counsel. (*Id.* at pp. 231–232.) The court feared a low bar for harmless error analysis could effectively eliminate the "need to admonish any defendant who had previously been convicted of a crime, and . . . decline[d] to adopt such a rule." (*Id.* at p. 231, italics omitted.) *Witcher*, however, predates *Mosby* by nearly a decade, and *Mosby* expressly disapproved of appellate court cases similar to *Witcher*. (*Mosby*, *supra*, 33 Cal.4th at p. 365, fn. 3.) In light of *Mosby*, *Witcher* does not alter the outcome of this case.

At bottom, the record discloses a defendant aware of the consequences of admitting the strike and, on appeal, we are given no reason to suspect defendant would have forced a trial, if given the choice again, or that a trial, if selected, would result in a different outcome. We do not wish to impose the "high cost" required to relitigate prior convictions in such a scenario, where it appears remand would inexorably lead to an identical sentencing outcome. (See *Mosby*, *supra*, 33 Cal.4th at p. 365, fn. 3.)

Finally, we see no prejudicial error in the trial court's failure to explicitly inform defendant his admission of the strike would double his punishment. "[W]hen the only error is a failure to advise of the consequences of the plea, the error is waived if not raised at or before sentencing. Upon a timely objection, the sentencing court must determine whether the error prejudiced defendant, i.e., whether it is 'reasonably probable' the defendant would not have pleaded guilty if properly advised." (*People v. Walker*

13

(1991) 54 Cal.3d 1013, 1023, overruled on other grounds by *People v. Villalobos* (2012) 54 Cal.4th 177, 183; see also *People v. Wrice* (1995) 38 Cal.App.4th 767, 770–771.)

Here, the trial court stated at sentencing it was doubling defendant's base term of six years to 12 because of the strike. Defendant raised no objection. Accordingly, he has forfeited the issue on appeal. In any event, defendant has, as noted, failed to demonstrate a reasonable probability that he would have withheld his admission had he been more fully informed of the consequences.

## DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.